IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SECURE ELEMENTS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 06-098-SLR |
| | ) | |
| CITADEL SECURITY SOFTWARE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S ANSWERING MEMORANDUM IN OPPOSITION TO
MCAFEE, INC.'S MOTION TO FILE A BRIEF AS *AMICUS CURIAE*
IN RESPONSE TO THE COURT'S ORDER TO SHOW CAUSE**

Plaintiff, Secure Elements, Inc. ("Secure Elements"), hereby respectfully requests that the

Court deny the motion by McAfee, Inc. ("McAfee") to file a brief as *amicus curiae* (D.I. 27) (the

"*Amicus* Motion") in response to the Court's order to show cause in the above action.

## STATEMENT OF FACTS

This case has been stayed since May 12, 2006, pending reexamination of the patent-in-

suit, U.S. Pat. No. 7,000,247. (D.I. 17). On January 11, 2007, the Fish & Richardson firm filed

a motion to withdraw as counsel to defendant, Citadel Security Software, Inc. ("Citadel"). (D.I.

20). The basis for requesting withdrawal was that McAfee had recently purchased the '247

patent-in-suit and that Fish & Richardson could not represent McAfee in this action because of a

conflict due to a pending case against McAfee in Texas (the "Texas Action"). (*Id.* at 1 ¶¶ 1-2).

The motion to withdraw stated that "[n]ew counsel will need to arrange for the proper party,

McAfee, to be brought into the litigation as the defendant/counterplaintiff." (*Id.* ¶ 4). On

January 19, 2007, the Court entered an order granting Fish & Richardson's motion to withdraw

as counsel.  (D.I. 21).  No new counsel for defendant ever appeared, and McAfee never intervened as the proper party.

On April 22, 2008, the Court issued an order (D.I. 26) (the "Order to Show Cause") directing defendant, a corporate party that had failed to retain new counsel, to show cause by May 22, 2008 why judgment should not be entered against it for failure to defend.  The Court expressly warned that failure to timely respond would in fact result in the entry of judgment against defendant.  On May 20, 2008, McAfee, asserting it is a non-party not subject to the jurisdiction of this Court, filed the *Amicus* Motion.  McAfee asserts that it has purchased the '247 patent-in-suit from Citadel, that Citadel no longer has any interest in this case, and that McAfee's "special interest" in the case is not being represented (*Amicus* Motion, page 3).  McAfee therefore requests permission to file a brief in response to the Order to Show Cause.  However, a review of the proposed brief attached to the *Amicus* Motion reveals that the brief is devoted in its entirety to arguing for dismissal of the action on grounds of lack of subject matter jurisdiction or mootness.

McAfee failed to bring to the Court's attention several other facts relevant to the *Amicus* Motion and the Order to Show Cause.  First, records filed with the U.S. Patent and Trademark Office show that the '247 patent-in-suit was assigned from Citadel to McAfee Security, LLC (a *Delaware* limited liability company), and then to the current owner, movant McAfee, Inc. (a *Delaware* corporation).  (Exhibit 1).  Thus, there is no basis for McAfee's assertion that it is not subject to the jurisdiction of this Court.

Second, in a brief filed by McAfee in the Texas Action before this Court issued its Order to Show Cause, McAfee admitted it is the real defendant-in-interest in this case.  (Exhibit 2).  In seeking to have Fish & Richardson disqualified from the Texas Action, McAfee stated it is an "undisputed material fact" that "[a]fter McAfee acquired Citadel's assets, [Fish & Richardson]

continued to defend the '247 patent *on behalf of McAfee* while suing McAfee in [the Texas

Action]." (*Id.* at 2, emphasis added). Indeed, McAfee's primary basis for seeking Fish &

Richardson's disqualification is that Fish & Richardson was "defend[ing] McAfee and its '247

patent in the *Secure Elements* litigation while, at the same time, prosecut[ing] claims against

McAfee in [the Texas Action]." (*Id.* at 7). McAfee further complained that, as a result of Fish &

Richardson's motion to withdraw in this case, "*McAfee* found itself without representation when

[the] motion was granted." (*Id.* at 6, emphasis added).

And third, in response to McAfee's request to discuss dismissing the case (Exhibit 3),

counsel for Secure Elements (Nathan Cummings) and counsel for McAfee (Michael Maimone)

held a teleconference on Friday, May 16, 2008. Secure Elements asked if McAfee would agree

to mutual releases, covenants-not-to-sue and dismissals with prejudice, and McAfee's counsel

promised to check with his client and respond to Secure Elements' proposal. McAfee's counsel

never responded, and instead filed the *Amicus* Motion.

## <u>ARGUMENT</u>

This case is currently stayed pending the outcome of reexamination proceedings in the

Patent Office. There is no pending motion or legal issue before the Court in connection with

which an *amicus* brief could provide useful guidance, and the Order to Show Cause to which

McAfee pretends it seeks to respond does not involve any such issue. The Order to Show Cause

merely sets a deadline by which the corporate defendant will have judgment entered against it if

it remains unrepresented by counsel, because a corporation cannot legally represent itself. No

offer of input from a "friend of the Court" is of relevance to the Order to Show Cause, and this is

not an appropriate situation for the intervention of an *amicus curiae*.

For whatever reason, despite admitting to the Texas Court that McAfee is now the real

defendant-in-interest in this case, McAfee still refuses to appoint new counsel to appear on its

behalf.  As a review of its proposed brief makes clear, McAfee's *Amicus* Motion has nothing whatsoever to do with the Order to Show Cause.  McAfee is just using that Order as an excuse to attempt to get its foot in the courthouse door and argue for dismissal for lack of subject matter jurisdiction.  In appropriate circumstances, an *amicus curiae* can submit argument in connection with a motion or issue before a court, but the *amicus* cannot itself file the motion or create the issue.  Citadel has not moved to dismiss, there is no such motion pending, and McAfee cannot argue the merits of such a non-existent motion under the guise of seeking to respond to the Order to Show Cause.  The *Amicus* Motion represents a completely improper attempt to argue a stealth motion to dismiss on behalf of a party that has not chosen to file such a motion, and the attempt should be rejected by the Court.

McAfee knew about this case before it purchased the '247 patent-in-suit, and knew that it was unrepresented in this case after Fish & Richardson's motion to withdraw was granted. (Exhibit 2 at 6, "McAfee found itself without representation when [Fish & Richardson's] motion was granted.").  McAfee never responded to Secure Elements' proposal for mutual releases and covenants not to sue, and waited four weeks after issuance of the Order to Show Cause to file anything with this Court.  Secure Elements should not be prejudiced by McAfee's delay and filing its *Amicus* Motion at the eleventh hour before this Court's May 22 deadline.  Simply put, there still is a threat of suit against Secure Elements by the owner of the '247 patent-in-suit, and actual controversies still exist about the alleged infringement and validity of the '247 patent-in-suit.  Therefore, if the Court is inclined to consider the merits of McAfee's *amicus* brief, Secure Elements requests the opportunity to be heard on a regular briefing procedure and schedule about the existence of subject matter jurisdiction and absence of mootness.

Finally, if counsel fails to enter an appearance on behalf of defendant, then the Court should do what it warned it would do, and enter judgment against defendant.  If counsel does

enter an appearance, then the case should remain stayed pending the outcome of the

reexamination.  If claims of the '247 patent-in-suit survive and emerge from reexamination, and

if the patent has not by then been assigned to some new owner, then Secure Elements will move

to amend its complaint to join McAfee (a Delaware corporation over which this Court will have

personal jurisdiction) as a party and will stipulate to the dismissal of Citadel at that time.  But at

this point there is no reason or need for this busy Court to do anything further, and the *Amicus*

Motion should be denied.

<div style="margin-left: 50%;">

ASHBY & GEDDES

*/s/ Steven J. Balick*

_____

Steven J. Balick (I.D. #2114)
John G. Day (I.D. #2403)
Lauren E. Maguire (I.D. #4261)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE  19899
302-654-1888

*Attorneys for Plaintiff*

</div>

*Of Counsel:*
Jonathan G. Graves
Nathan K. Cummings
Erik B. Milch
COOLEY GODWARD KRONISH LLP
11951 Freedom Drive
Reston, Virginia  20190-5656
703-456-8000

Dated:  May 22, 2008

# EXHIBIT 1

 **United States Patent and Trademark Office** 

Home | Site Index | Search | Guides | Contacts | *e*Business | *e*Biz alerts | News | Help

**Assignments on the Web** > Patent Query

# Patent Assignment Abstract of Title
**NOTE:Results display only for issued patents and published applications.
For pending or abandoned applications please consult USPTO staff.**

**Total Assignments: 3**

**Patent #:** 7000247    **Issue Dt:** 02/14/2006    **Application #:** 10335490    **Filing Dt:** 12/31/2002
**Publication #:** 20050229256    **Pub Dt:** 10/13/2005
**Inventor:** Carl E. Banzhof
**Title:** AUTOMATED COMPUTER VULNERABILITY RESOLUTION SYSTEM

**Assignment: 1**
**Reel/Frame:** 013643/0923    **Recorded:** 12/31/2002    **Pages:** 2
**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).
**Assignor:** BANZHOF, CARL E.    **Exec Dt:** 12/31/2002
**Assignee:** CITADEL SECURITY SOFTWARE, INC.
8750 N. CENTRAL EXPRESSWAY
SUITE 100
DALLAS, TEXAS 75231
**Correspondent:** CONLEY ROSE, P.C.
GENE C. VALLOW
GRANITE PARK TWO
5700 GRANITE PARKWAY, #330
PLANO, TEXAS 75024

**Assignment: 2**
**Reel/Frame:** 018668/0179    **Recorded:** 12/22/2006    **Pages:** 8
**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).
**Assignor:** CITADEL SECURITY SOFTWARE, INC.    **Exec Dt:** 12/04/2006
**Assignee:** MCAFEE SECURITY LLC
5000 HEADQUARTERS DRIVE
MS: 15257
PLANO, TEXAS 75024
**Correspondent:** KRISTIN JORDAN HARKINS
5700 GRANITE PARKWAY, SUITE 330
CONLEY ROSE, P.C.
PLANO, TX 75024

**Assignment: 3**
**Reel/Frame:** 018923/0152    **Recorded:** 02/23/2007    **Pages:** 5
**Conveyance:** ASSIGNMENT OF ASSIGNORS INTEREST (SEE DOCUMENT FOR DETAILS).
**Assignor:** MCAFEE SECURITY, LLC, A DELAWARE LIMITED LIABILITY COMPANY    **Exec Dt:** 02/22/2007
**Assignee:** MCAFEE, INC., A DELAWARE CORPORATION
3965 FREEDOM CIRCLE
SANTA CLARA, CALIFORNIA 95054
**Correspondent:** KRISTIN JORDAN HARKINS
5700 GRANITE PARKWAY, SUITE 330
PLANO, TX 75024

Search Results as of: 05/22/2008 01:53 PM
If you have any comments or questions concerning the data displayed, contact PRD / Assignments at 571-272-3350. v.2.0.1
Web interface last modified: April 20, 2007 v.2.0.1

| .**HOME** | **INDEX** | **SEARCH** | *e***BUSINESS** | **CONTACT US** | **PRIVACY STATEMENT**

# EXHIBIT 2

UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| DEEP NINES, INC., | § | |
| | § | |
| Plaintiff | § | |
| | § | C.A. NO. 9:06-CV-174 |
| v. | § | |
| | § | JUDGE RON CLARK |
| McAFEE, INC., | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT MCAFEE, INC.'S MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL, FISH & RICHARDSON, P.C., AND BRIEF IN SUPPORT

### I.    INTRODUCTION

This proceeding has been undermined by a new form of opportunism that, if left unchecked, will have a long lasting effect on the practice of law. The present circumstances illustrate an emerging practice among some lawyers to help small corporate clients attract private investors to finance costly IP litigation against companies that are large enough to purchase their clients. The goal of the litigation then becomes an acquisition, rather than an impartial adjudication on the merits. As a result, the judicial system becomes the primary tool of private equity firms to "leverage" a business transaction and attorney-client confidences become behind-the-scenes bargaining chips.

Fish & Richardson, P.C. ("F&R"), the self-proclaimed Number One Patent Litigation Firm *in the world*, established an attorney-client relationship with McAfee, Inc. ("McAfee") in 2004. The relationship, which continued through last month, exposed F&R to a wealth of privileged and highly confidential information, including: (1) insight into McAfee's internal responses to IP litigation; (2) how McAfee's recently acquired threat management technology works; and (3) the maximum purchase price McAfee was willing to pay for the acquisition of a

security firm comparable to Deep Nines.  F&R acquired all of its knowledge *prior* to filing this lawsuit against McAfee.  In no time, two private investment firms, with a penchant for soliciting "investment opportunities" from IP litigators, announced that as much as $10M was being channeled to Deep Nines *to fund this lawsuit against McAfee*.  In return, the investors could share directly in any litigation proceeds, take an equity position in the event of an acquisition, or both.  That a pack of investors would seek to leverage the judicial system to coerce a sale poses justifiable concern.  That a respectable law firm would gloss over a conflict of interest to advance the abusive goals of its client warrants disqualification.

## II.   UNDISPUTED MATERIAL FACTS

1.     In July 2004, McAfee became a client of F&R.  (Ex. 2.)

2.     Attorney-client communications occurred between Anne Stodghill (for McAfee) and Steve Stodghill (for F&R).  (Ex. 2).

3.     Anne Stodghill was privy to a wide variety of confidential and privileged information.  (Ex. 5).

4.     Citadel Security Software, Inc. was defended by F&R in litigation regarding its '247 patent.  (Ex. 7).

5.     After McAfee acquired Citadel's assets, F&R continued to defend the '247 patent on behalf of McAfee while suing McAfee in this lawsuit.  (Exs. 15 & 7).

6.     Deep Nines is accusing the '247 patent and technology in this case, which is substantially related to the Citadel suit.  (Ex. 8).

7.     There is a substantial risk that F&R and Deep Nines could use the confidential and privileged information from its representation of McAfee against McAfee in this case.

### III.   BASIS FOR MOTION

Defendant McAfee moves to disqualify F&R from representing Deep Nines, Inc. ("Deep Nines") for the following reasons:

(1)     During the pendency of this lawsuit, F&R concurrently represented McAfee's interests in patent litigation while at the same time prosecuting Deep Nine's claims for patent infringement against McAfee.  Not only has F&R assumed a representation directly adverse to McAfee, which alone requires disqualification, the issues in the two patent cases are substantially related—further supporting the need for disqualification.

(2)     F&R's representation of Deep Nines is substantially related to its former representation of McAfee and there is a substantial threat that F&R's continued representation of Deep Nines could result in the use or disclosure of McAfee's confidential information obtained during the prior representation to McAfee's detriment.

(3)     Under the facts of this case, the balance between society's interests in protecting the integrity of our judicial system and Deep Nine's interests in maintaining its counsel of choice favor the disqualification of F&R.

### IV.   FACTUAL BACKGROUND

**A.     In 2004, F&R established an attorney-client relationship with McAfee.**

In July 2004, F&R established an attorney-client relationship with McAfee when McAfee's in-house counsel, Anne Stodghill, sought and obtained legal advice from her husband, Steve Stodghill, a principal in F&R.  (Ex. 1, Sealed Affidavit of Melissa Dillow at ¶ 3; Ex. 2, Sealed e-mail from Anne Stodghill to Steve Stodghill at F&R with Hughes & Luce, LLP and Goodwin Proctor LLP work product).  Specifically, she asked for Steve Stodghill's professional opinion on the strategic recommendations of McAfee's outside counsel, Goodwin Procter, LLP

and Hughes & Luce, LLP, in a pending intellectual property case, *Cozza v. Network Associates, Inc.*[1] (Ex. 2, Ex. 3, Cozza Complaint). Anne Stodghill not only sought and obtained Steve Stodghill's legal advice, she sent him an e-mail at F&R that attached the privileged and confidential attorney-client communication and attorney work product prepared by McAfee's outside counsel. (Ex. 2).

In her capacity as an in-house lawyer with McAfee, and later as McAfee's Director of Human Resources, Anne Stodghill was privy to a wide variety of confidential and privileged information that McAfee would not willingly reveal to its litigation adversaries or competitors. (Ex. 1 at ¶ 3, Ex. 5, Sealed Affidavit of Stephen Thompkins at ¶¶ 2-6).

**B.    Unknown to McAfee, F&R represented Citadel, a small security competitor, during negotiations with McAfee concerning a potential sale and acquisition. F&R received McAfee's confidential information during the process.**

In June 2005, McAfee began discussing the potential acquisition of Citadel Security Software, Inc. ("Citadel"). (Ex. 6, Citadel Proxy on Merger or Acquisition, p. 27). Citadel owned U.S. Patent No. 7,000,247 (the '247 Patent). (Ex. 7, Citadel Answer and Counterclaim). The '247 Patent relates to technology known as "Hercules," a security threat management product. (Ex. 8, Sealed Affidavit of John Teddy, ¶¶ 4-6). The discussions with Citadel were unsuccessful and ended in October 2005. (Ex. 6, p. 27).

In February 2006, Secure Elements, Inc. filed a lawsuit against Citadel seeking to declare Citadel's patent on vulnerability remediation software (including the '247 patent) invalid. F&R, and Decker Cammack in particular, represented Citadel in that lawsuit as defendant and counterclaim plaintiff. (Ex. 7).

---

[1] NAI then changed its name to McAfee and McAfee was substituted as the Defendant. (Ex. 4, McAfee's Opposition to Motion to Strike).

In May 2006, Citadel and McAfee resumed their discussions concerning a potential acquisition and sale, and executed a Mutual Non Disclosure Agreement ("NDA") to protect and facilitate the exchange of confidential information.  (Ex. 9 Sealed, NDA).  While either party could choose to disclose confidential information to their attorneys, in that event the lawyers became bound by the NDA.  (Ex. 9, ¶ 4(a)).  Over the next three months, there were "numerous" meetings that culminated in the preparation and exchange of a letter of intent to purchase Citadel's assets.  (Ex. 9, p. 28).

Citadel, without McAfee's knowledge or permission, sent the draft purchase agreement to Decker Cammack and Steve Stodghill at F&R. [2]  (Ex. 10, Sealed August 6, 2006 E-mail and attached draft asset purchase agreement).[3]  F&R received the confidential draft on August 6, 2006, which included, among other things, the proposed purchase price.[4]  (Exs. 9, 10).  Thus, at that time F&R was aware of the minimum price that McAfee was willing to pay for Citadel's technology.  Under the NDA, once F&R became privy to this confidential information, it was prohibited from using it for any reason, especially if to the detriment of McAfee.  (Ex. 9, ¶ 4 (a)).

**C.     After obtaining McAfee's confidential information, F&R and Deep Nines file suit.**

Within 10 days of obtaining McAfee's confidential information regarding the Citadel asset purchase, F&R was back in court—*this time suing McAfee* on behalf of Deep Nines.  (Ex. 10, Plaintiff's Original Complaint).

---

[2] McAfee's counsel never negotiated with F&R nor had knowledge of their involvement.  McAfee's lawyers negotiated only with Citadel's corporate counsel.

[3] Because of confidentiality concerns, the Asset Purchase Agreement did not identify all the parties to the transaction by their real names. (Ex. 10). The final version of the Agreement includes the name of the parties. (Ex. 15).

[4] The asset purchase did not become public until November 2006. (Ex. 6, p. 2).

**D.    F&R defended the Citadel patent after McAfee acquired it while at the same time accusing it in this case.**

When F&R filed this lawsuit, it not only knew about the Citadel purchase, it knew this lawsuit might accuse the '247 patent and Hercules once they were owned by McAfee.  Now that McAfee owns the '247 patent and Hercules, F&R is indeed accusing '247 and Hercules in this lawsuit.  Through its representation of the '247 patent and Hercules in *Secure Elements*, F&R would have known that Hercules works conjointly with other McAfee security products such as McAfee's Total Protection for Small Business ("TOPS-SB").  (Ex. 8, ¶¶ 10-11).  TOPS-SB is one of the products accused by Deep Nines to infringe its patent.  (Ex. 12, Deep Nines' Disclosure of Asserted Claims).  Because Hercules works in conjunction with TOPS-SB to provide a "unified threat management system" it is part of the system that F&R is accusing on behalf of Deep Nines in this lawsuit.  (Ex. 8, 12).  In fact, as F&R repeatedly emphasized at the Case Management Conference, Deep Nines is accusing *any McAfee product* that infringes on Deep Nine's product's ability to offer "all the different ways that you would need to protect your network in one piece of software."  (Ex. 11, Case Management Conference Transcript, p. 8).  This would necessarily include the '247 Patent and Hercules.

Nevertheless, after the Citadel asset purchase closed in October 2006, F&R continued to defend *McAfee's* '247 patent and Hercules in the *Secure Elements* litigation, while at the same time prosecuting this lawsuit against McAfee.  (Exs. 12-15).  F&R, finally acknowledging the existence of a conflict, filed a motion to withdraw from *Secure Elements* in January 2007.  Even then, F&R misrepresented to the Court that it had contacted McAfee regarding its intent to withdraw.  (Ex. 13, Motion; Ex. 5 at ¶ 7).  It had not.  As a result, McAfee found itself without representation when F&R's motion was granted eight days later.  (Ex. 5 at ¶ 7, Ex. 16).

**E.**     **The goal of this lawsuit is to coerce  McAfee into acquiring Deep Nines.**

McAfee always suspected, but now knows, that the goal of this lawsuit is to compel McAfee to acquire Deep Nines by the threat of protracted—and very expensive—litigation. Three recent events confirm McAfee's suspicions.  First, McAfee discovered that F&R, when representing Citadel, engaged in tactics to delay and unreasonably escalate the cost of litigation in order to coerce settlements.  (Ex. 14, Sealed "Discovery Plan" from G. Harper to Steve Stodghill).  Second, in February 2007, Maria Lewis Kussmaul approached McAfee's Interim CEO, Dale Fuller, and told him that her investment banking firm, America's Growth Capital, had recently teamed with Altitude Capital Partners to fund a $10 million war chest for Deep Nines to enforce intellectual property rights.  The money, she said, would enable Deep Nines to wage a protracted legal battle against McAfee.  But Deep Nines would dispense with the litigation if McAfee would purchase the company for $100 million.  (Ex. 17, Affidavit of Dale Fuller at ¶¶ 2-4).  Finally, Kussmaul followed up with a PowerPoint presentation and emphasized the enthusiasm of Deep Nines' officers and directors for a "potential McAfee-Deep Nines combination."  (Exhibit 17, Exs. A and B).  Kussmaul's continuing, and unwelcome, advances happened as recently as March 5, 2007.  (Ex. 18, E-mail from Maria Lewis Kussmaul to Dale Fuller).

## V.     ISSUES PRESENTED

1.     Whether F&R can defend McAfee and its '247 patent in the *Secure Elements* litigation while, at the same time, prosecute Deep Nines' claims against McAfee in this lawsuit, when the claims in this lawsuit are directly adverse to McAfee, and when the issues in the two lawsuits are substantially related—all in violation of Rule 1.7 of the American Bar Association's

Model Rules of Professional Conduct and Rule 1.06 of the Texas Disciplinary Rules of Professional Conduct.

2. Whether F&R can continue to represent Deep Nines against McAfee (who is now a former client) when that representation is: (1) substantially related to the former representation of McAfee; and (2) there is a substantial threat that confidential and privileged information obtained during that prior representation could be used against McAfee in this lawsuit to its detriment.

## VI.   ARGUMENT

### A.   Standard for Disqualification

This motion to disqualify is determined by federal law. *Crowe v. Smith*, 151 F.3d 217, 233 (5th Cir. 1998). When a party moves to disqualify opposing counsel, the court considers the: (1) local rules; (2) American Bar Association's ("ABA") Model Rules of Professional Conduct ("Model Rules"); (3) ABA's Model Code of Professional Responsibility ("MCPR"); and (4) state rules of conduct. *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001). If a conflict exists between the model and state rules, the model rules control. *In re Dresser Indus., Inc.*, 972 F.2d 540, 543 (5th Cir. 1992). In this Court, "customs and practices of this bar" also govern attorney conduct. L.R. AT-(2)(a).

When a party moves to disqualify counsel, the court must also balance society's interests against a party's right to counsel of choice. *F.D.I.C. v. United States Fire Ins. Co.*, 50 F.3d 1304, 1314 (5th Cir. 1995). These societal interests are concerned with whether the attorney's conduct: (1) raises the appearance of impropriety; (2) increases the possibility that a specific impropriety will occur; and (3) increases the likelihood of public suspicion of the judicial system. *Id.*

**B.     F&R must be disqualified because its concurrent representation is a conflict of interest.**

> **1.     The Model Rule prohibits concurrent representation of clients when their interests are directly adverse.**

ABA Model Rule 1.7 prohibits the concurrent representation of clients when their interests are directly adverse.  MODEL RULES OF PROF'L CONDUCT 1.7(a).  The Texas Disciplinary Rules of Professional Conduct also addresses the concurrent representation of adverse clients, "A lawyer shall not represent a person if the representation of that person involves a substantially related matter in which that person's interests are materially and directly adverse to the interests of another client of the lawyer or the lawyer's firm." TEXAS DISCIPLINARY R. OF PROF'L CONDUCT 1.06(b)(1).

Like the Model Rule, Rule 1.06 prohibits conflicting representations unless both clients give written consent after full disclosure.  TEXAS DISCIPLINARY R. OF PROF'L CONDUCT 1.06(c).  Only Texas requires the representations to be "substantially related."  In the Fifth Circuit, national standards prevail over state standards if there is any conflict.  *Dresser*, 972 F.2d at 543-44.  Thus, F&R should be disqualified if its representation of Deep Nines is directly adverse to its concurrent representation of McAfee.

> **2.     F&R's representation of Deep Nines is directly adverse to F&R's representation of McAfee.**

F&R's representation of Deep Nines is directly adverse to F&R's representation of McAfee.  "Dual representation is directly adverse if the lawyer reasonably appears to be called upon to espouse adverse positions in the same matter or a related matter." *National Med. Enter., Inc. v. Godbey*, 924 S.W.2d 123, 127 (Tex. 1996).  Although F&R withdrew from the *Secure Elements* litigation in January 2007, McAfee is still considered a "current" client because the conflict inquiry looks at whether a conflict of interests existed *when suit was filed and while this*

*litigation was pending. See Rembrandt Tech., L.P. v. Comcast Corp.*, 2007 WL 470631, \*2 (E.D. Tex. February 8, 2007)(disqualifying Fish & Richardson, P.C. and finding client was a current client because it was a client during the case).

Here, F&R was representing McAfee's interests in *Secure Elements* from the date that McAfee acquired the '247 patent and Hercules[5] while, at the same time, it was prosecuting Deep Nines' claims against McAfee. (Ex. 15, 16). Moreover, there is no doubt F&R knew that it represented McAfee (or McAfee's interests) in *Secure Elements* once the Citadel asset sale closed because F&R was involved in the Citadel/McAfee sale. (Ex. 10). In fact, F&R's recently filed motion to withdraw as counsel in *Secure Elements* admits F&R knew there would be a conflict. (Ex. 13, ¶ 2). What F&R failed to tell the *Secure Elements* Court (and McAfee) prior to the Citadel closing, was that F&R knew that its representation of Deep Nines in this matter created an irreconcilable conflict of interest (Ex. 10). Nevertheless, F&R filed this lawsuit and continues to prosecute it. Moreover, although F&R characterized this lawsuit as "unrelated" to the issues in *Secure Elements* in its motion to withdraw, it is not. F&R is currently accusing the '247 patent and Hercules in this matter—the very intellectual property it was hired to defend in *Secure Elements*.

> **3.    F&R's representation of Deep Nines is "substantially related" to its defense of the '247 patent and Hercules.**

Even though McAfee does not bear the burden to show that F&R's representation of Deep Nines is "substantially related," under Texas Rule 1.06, McAfee can meet this heightened standard. *In re Dresser Indus., Inc.*, 972 F.2d at 543. Here, through its representation of Citadel, F&R unquestionably acquired knowledge of Citadel's patent portfolio, its trade secrets and

---

[5] October 2, 2006. (Ex. 15).

Hercules.  And there is no question that Deep Nines is accusing Hercules under its "unified threat management system."  (Exs. 8, 11).

**C.    F&R must be disqualified because its representation of Deep Nines conflicts with its former representation of McAfee.**

    **1.    The Model Rule prohibits lawsuits against former clients regarding matters that are substantially related or when confidences could be used against the former client.**

F&R must also be disqualified because its representation of Deep Nines conflicts with its former representation of McAfee.  ABA Model Rule 1.9 governs attorneys' conflicts with former clients.  Without the written consent of the former client it prohibits:

    (1)    a lawyer who has formerly represented a client cannot then represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client; and

    (2)    a lawyer from representing a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter.

MODEL RULES OF PROF'L CONDUCT 1.9(a)-(b).

Similarly, Texas Rule 1.09 prohibits an attorney from representing another party in a matter adverse to a former client if the representation "in reasonable probability" will involve a violation of the attorney's duty to protect a client's confidential information or if the new representation is substantially related.  TEX. DISCIPLINARY R. OF PROF'L CONDUCT RULE 1.09(a).  Here, F&R's representation of Deep Nines violates both Rules because it is substantially related to the prior representation of the '247 Patent and Hercules and because of the threat that McAfee's confidential and privileged information could be used against it.

2. **For the reasons above-stated, F&R's representation of Deep Nines is substantially related to its prior representation of the '247 patent and Hercules.**

3. **As a result of its prior representation, F&R has confidential information that could be used against McAfee in this case.**

There can be no serious question that McAfee was F&R's client as a result of the communications between Anne and Steve Stodghill in their capacities as attorneys for their respective employers. (Ex. 3). Although the attorney-client relationship may be created by contract, it may also be implied from the actions of the parties. *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 405 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.). The determination is based on objective standards of what the parties did and said—not on their alleged subjective states of mind. *Terrell v. State*, 891 S.W.2d 307, 313 (Tex. App.—El Paso 1994, pet. ref'd). Here, the objective evidence points to the inescapable conclusion that an attorney-client relationship existed between McAfee and F&R. And there is also a substantial likelihood that a wide variety of confidential and privileged information that would be detrimental to McAfee in this lawsuit was exchanged between the Stodghills. (Ex. 5 at ¶¶ 3-6).

Importantly, McAfee does not have to produce specific proof that F&R *actually received* this confidential information as McAfee's former counsel. The Model Rule simply requires in inquiry into whether there is a "substantial risk that confidential factual information as would normally have been obtained in the prior representation would materially advance the client's position in the subsequent matter." MODEL RULES OF PROF'L CONDUCT 1.9.(cmt. 3).

Similarly, the Texas Rule examines whether a lawyer *could have* acquired confidential information concerning a prior client that could be used either to that prior client's disadvantage or for the advantage of the lawyer's current client. TEXAS DISCIPLINARY R. OF PROF'L CONDUCT 1.09 (cmt 4). Once a court determines that the present representation is substantially related to

the prior representation, *the court irrebuttably presumes that relevant confidential information was disclosed during the prior representation.* *In re American Airlines, Inc.*, 972 F.2d 605, 614 (5th Cir. 1992). Moreover, the presumption is imputed to the entire firm. *Grosser-Samuels v. Jacquelin Designs Enter., Inc.*, 448 F. Supp. 2d 772, 779 (N.D. Tex. 2006).

There is no way for McAfee to be assured that the wealth of confidential and privileged information possessed by Anne Stodghill was not passed to Steve Stodghill when they conferred as in-house counsel and outside counsel for McAfee. And the law presumes those confidences were shared with the entire firm. Under these facts, there is a reasonable probability that McAfee's confidential information could be used to its disadvantage. TEXAS DISCIPLINARY R. OF PROF'L CONDUCT 1.09(a) & 1.05(b)(3).

**D.**   **The balancing of society's interest in maintaining the integrity of the judicial system and Deep Nine's right to choose its counsel favors F&R's disqualification.**

Under the facts of this case, the social interest factors also favor F&R's disqualification. First, the appearance of impropriety is pervasive. Anne Stodghill was in-house counsel for McAfee, used her husband's firm as outside counsel, and divulged McAfee's confidential and privileged information to him. (Exs. 1 & 2). After she left McAfee, however, her husband's firm sued McAfee. Moreover, she was privy to confidential and privileged information both in her role as in-house counsel and as director of human resources that would prejudice McAfee if it was used against McAfee. (Ex. 5). Because the evidence shows that Anne Stodghill in fact divulged McAfee's confidential and privileged information to Steve Stodghill in her capacity as McAfee's in-house counsel, the court should also presume that additional confidential and privileged information was exchanged between them that could be used to McAfee's detriment.

Second, F&R's actions only serve to increase public suspicion of the judicial system and the integrity of attorneys. The timing of this lawsuit and the information obtained by F&R from

Citadel is but one example. F&R obtained McAfee's confidential information regarding McAfee's decision to buy Citadel's assets at a time when it was determining whether to sue McAfee on behalf of Deep Nines. (Ex. 3). In fact, both matters involved the same F&R lawyer. (Ex. 10).

Conversely, Deep Nine's interests in its counsel of choice should be given little weight. F&R should have revealed the conflict. It did not. And the actions of Deep Nines investors evidence Deep Nines' intent to use the judicial system as a bargaining tool. Accordingly, F&R should be disqualified from representing Deep Nines.

**REQUEST FOR RELIEF**

For all these reasons, Defendant McAfee, Inc. requests that the Court disqualify Fish & Richardson, P.C. from representing Deep Nines, Inc.

Respectfully submitted,

/s/Harold H. Walker, Jr._____
Harold H. Walker, Jr.
Lead Counsel
State Bar No. 20702200
hwalker@rosewalker.com
Martin E. Rose
State Bar No. 17253100
mrose@rosewalker.com
**ROSE●WALKER, L.L.P.**
3500 Maple Avenue, Suite 900
Dallas, Texas 75219
Telephone: (214) 752-8600
Fax: (214) 752-8700

Danny L. Williams
State Bar No. 21518050
danny@wmalaw.com
J. Mike Amerson
State Bar No. 01150025
mike@wmalaw.com
**Williams, Morgan & Amerson**
10333 Richmond Avenue, Suite 1100
Houston, Texas 77042
Telephone: (713) 934-7000
Fax: (713) 934-7011

J. Thad Heartfield
State Bar No. 09346800
thad@jth-law.com
**Law Offices Of J. Thad Heartfield**
2195 Dowlen Road
Beaumont, Texas 77706
Telephone: (409) 866-3318
Fax: (409) 866-5789
**ATTORNEYS FOR DEFENDANT
McAFEE, INC.**

## CERTIFICATE OF CONFERENCE

I certify that on March 8, 2007, I conferred with Thomas M. Melsheimer and Barry Shelton, counsel for Defendant McAfee, Inc., in a good faith attempt to resolve this matter without court intervention, and they are opposed to the relief sought in this motion.

/s/ Martin E. Rose\
Martin E. Rose

## CERTIFICATE OF SERVICE

The undersigned certifies that all counsel of record who have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on March 20, 2007. Any other counsel of record will be served by first class mail.

/s/ J. Thad Heartfield\
J. Thad Heartfield

## CERTIFICATE OF AUTHORIZATION TO SEAL

Pursuant to Local Rule CV-5(a)(7)(A), the undersigned certifies that authorization was granted, in the Agreed Protective Order entered in this case on January 12, 2007, for filing the foregoing document under seal.

/s/ J. Thad Heartfield\
J. Thad Heartfield

# EXHIBIT 3

## Cummings, Nathan

**From:**    SBalick [SBalick@ashby-geddes.com]
**Sent:**    Wednesday, May 14, 2008 2:45 PM
**To:**      maimonem@gtlaw.com
**Cc:**      Graves, Jon; Cummings, Nathan; Milch, Erik; JDay; LMaguire
**Subject:** RE: Secure Elements, Inc. v. Citadel Security Software, Inc., C.A. No. 06-098-SLR


Hi Mike. My firm is local counsel to Secure Elements in the above action. I have been otherwise occupied yesterday and today, and until I just saw your follow-up message of this afternoon, I had not focused on the fact that your e-mail of yesterday afternoon did not copy Secure Elements' lead counsel -- Jonathan Graves, Nathan Cummings, and Erik Milch of Cooley Godward Kronish. Via this e-mail, I am copying them with both of your below messages, and either I, or one of them, will get back to you as soon as reasonably possible.

Thanks.

Steve


Steven J. Balick
Ashby & Geddes
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899 (19801 for courier deliveries)
Main: 302-654-1888
Direct: 302-504-3700
Facsimile: 302-654-2067
E-Mail: sbalick@ashby-geddes.com

---

**From:** maimonem@gtlaw.com [mailto:maimonem@gtlaw.com]
**Sent:** Wednesday, May 14, 2008 1:53 PM
**To:** SBalick; JDay; LMaguire
**Subject:** Secure Elements, Inc. v. Citadel Security Software, Inc.

Counsel,

I was wondering if you had a chance to think about the message below that was sent to you yesterday? Please let me know your thoughts. Absent a response, I need to contact the Court and provide the Court with the necessary information.

Thank you and best regards.

Mike

_____

Counsel,

I represent McAfee, Inc. ("McAfee"). As you may know, Citadel Security Software, Inc. ("Citadel") sold various assets to McAfee, which included the patent at issue in the above-referenced action. In light of the sale of the patent to McAfee, as stated in the Motion to Withdraw of Counsel filed by counsel to Citadel on January 11, 2007, and granted by the Court on January 19, 2007, Citadel "no longer has an interest in this case as it no longer owns

the patent in suit."  McAfee neither is a party to the above-referenced action, nor is subject to the jurisdiction of the District of Delaware.  Accordingly, there is no defendant named in the above-referenced action interested in defending the action.

Based upon the above, it makes sense for your client, Secure Elements, Inc. ("Secure"), to inform Judge Robinson of these facts and to dismiss the above-referenced action voluntarily.

Please let me know your thoughts at your earliest convenience.

Best regards.

Mike

Michael J. Maimone
Greenberg Traurig, LLP
The Nemours Building
1007 North Orange Street, Suite 1200
Wilmington, Delaware 19801
Tel:   (302) 661-7389
Fax:  (302) 661-7360

---

    Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, was not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.

    The information contained in this transmission may contain privileged and confidential information.  It is intended only for the use of the person(s) named above. If you are not the intended recipient,  you are hereby notified that any review, dissemination, distribution or duplication of this communication is strictly prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message. To reply to our email administrator directly, please send an email to postmaster@gtlaw.com.

---